

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

Signed June 17, 2024

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| RICHARD K. ARCHER and | § | Case No.: 17-20045-rlj7 |
| RUTH E. ARCHER, | § | |
| | § | |
| Debtors. | § | |

## MEMORANDUM OPINION AND ORDER

The Internal Revenue Service (IRS) moves for summary judgment in this proceeding where Kent Ries, the chapter 7 Trustee, seeks an order of marshaling that would thereby require the IRS to satisfy its claim against land that was exempted from the bankruptcy estate and thus not against estate assets.[1]

The parties agreed to invoke the adversary proceeding rules in Part VII of the Federal Rules of Bankruptcy Procedure to this matter. ECF No 134.[2] The Court entered an order to that effect. ECF No. 137.

---

[1] The Trustee also sought a determination of the IRS's claim and of the bankruptcy estate's tax liability. The parties resolved these issues in two separate stipulations. ECF Nos. 163 & 168. The first stipulation, entered on January 8, 2024, ended the Trustee's request to determine the estate's tax liability. ECF No. 163. The second stipulation, entered on January 29, 2024, withdrew the portions of the Trustee's motion that requested a determination of the IRS's claim. ECF No. 168.

[2] "ECF No." refers to the numbered docket entry in the Court's electronic case file for Case No. 17-20045.

1

The Court heard argument and took the matter under advisement on February 15, 2024.

I.

Richard K. Archer and Ruth E. Archer (Debtors) filed their chapter 7 petition on February 24, 2017. ECF No. 1. The IRS filed a priority claim in the case of $255,692.98. Case No. 17-20045, Claim No. 2.

In Debtors' petition, they describe four parcels of real estate having a total value of over $1.1 million. ECF No. 1 at 9–11. The Debtors exempted the four lots from their bankruptcy estate. *Id*. at 20–21. The exemptions claim arises under the Texas Constitution, Article 16 §§ 50 and 51 and Texas Property Code §§ 41.001-.002.[3]

The two Debtors passed away, and now the exempt property is in Debtors' probate estate (more specifically, Ruth Archer's probate estate).[4] The estate administrator of both probate cases stated the property has a "probable value not in excess of $200,000.00." ECF No. 117 ¶¶ 8–9.

The Trustee asks that the Court require the IRS seek payment exclusively from the probate estate (which holds assets exempted from the bankruptcy estate) so that the Trustee may use estate funds for greater distributions to general unsecured creditors.

The IRS's summary judgment motion asks that the Court deny the Trustee's marshaling request because the "probate exception" bars the marshaling of exempt probate assets; marshaling does not apply to the United States; and even if marshaling does apply, it could not and should not be used in this case. ECF No. 157.

---

[3] An important note is that the Debtors exempted their homestead under provisions that do *not* exempt the homestead from federal tax liens. Tex. Const. Art. 16 § 50(a)(4) ("The homestead … is hereby protected from forced sale, for the payment of all debts except for … the refinance of a lien against a homestead, including a federal tax lien resulting from the tax debt of both spouses, if the homestead is a family homestead, or from the tax debt of the owner."); Tex. Prop. Code § 41.001(a), (b)(5) (same).
[4] The Trustee's motion specifies that Richard Archer passed away on April 5, 2022. ECF No. 117 ¶ 8. His passing prompted the probate filing of Cause No. 2022-173-P in Randall County, Texas. *Id*. Richard Archer left all his property to his surviving spouse, Ruth Archer. *Id*. Ruth Archer passed away on May 27, 2022. *Id*. ¶ 9. To probate her estate, Cause No. 2022-397-P was filed in Randall County, Texas. *Id*. Ruth Archer left her property to her children or her grandchildren (of her two predeceased children). *Id*.

II.

A.

## The Doctrine of Marshaling

The Supreme Court "has said that 'the equitable doctrine of marshaling … rests upon the principle that a creditor having two funds to satisfy his debt may not, by his application of them to his demand, defeat another creditor, who may resort to only one of the funds.'" *Meyer v. United States*, 375 U.S. 233, 236, 84 S. Ct. 318, 321 (1963) (quoting *Sowell v. Fed. Rsrv. Bank*, 268 U.S. 449, 456–457 (1925)). "In other words, '[i]ts purpose is to prevent the arbitrary action of a senior lienor from destroying the rights of a junior lienor or a creditor having less security.'" *Peoples State Bank v. GE Capital Corp. (In re Ark-La-Tex Timber Co.)*, 482 F.3d 319, 331 n.16 (5th Cir. 2007) (alteration in original) (quoting *Meyer*, 375 U.S. at 237). "A junior lienholder may only invoke this doctrine if it will not operate as a detriment upon other creditors." *Id.* (citing *John W. Stone Oil Distrib., Inc. v. M/V Mr. W. Bruce*, 752 F.2d 184, 187 (5th Cir. 1985)).

State law generally governs the application of the doctrine of marshaling. *In re Dig It, Inc.*, 129 B.R. 65, 67 (Bankr. D.S.C. 1991). After a review of the case law, Texas does not have a strict test or a list of factors that courts consider when determining the equitable remedy of marshaling assets. This court (Judge Robert C. McGuire presiding), citing to a treatise, used the following test: "1) the contesting claimants both have secured claims against a common debtor; 2) the funds in question belong solely to the common debtor; and 3) one of the lienors, alone, could resort to more than one fund or asset of the debtor." *Wurst v. City of New York (In re Packard Props., Ltd.)*, 112 B.R. 154, 157 (Bankr. N.D. Tex. 1990). Another similar test is used in different jurisdictions, but that test has an important distinction—that the first element requires "two creditors with a common debtor" as opposed to claimants with secured claims. *United*

3

States v. Friend (In re A. E. I. Corp.)*, 11 B.R. 97, 99 (Bankr. E.D. Pa. 1981) (citing *Farmers & Mechs. Bank v. Gibson*, 7 B.R. 437 (Bankr. N.D. Fla. 1980)).

There is a nuance under Texas caselaw that may be important. Texas courts have viewed the doctrine as protecting *subsequent grantees as well as lien holders*. *See Wynnewood Bank & Tr. v. State*, 767 S.W.2d 491, 498 (Tex. App.—Dallas 1989, no writ) ("For instance, if the mortgagor has conveyed parcels out of the mortgaged property to other owners, those grantees may, under appropriate circumstances, require the mortgagee to look first to the property remaining in the hands of the mortgagor for satisfaction of its debt and to proceed against the property conveyed to the subsequent grantees only if the property in the mortgagor's hands is insufficient to satisfy the debt.").[5]

## B.
## IRS's Arguments

### 1. Probate Exception

The IRS contends that the Court, as a federal court, lacks jurisdiction to order marshaling of the probate assets because that would dispose of probate estate property. "[T]he probate exception reserves to state probate courts the probate or annulment of a will and the administration of a decedent's estate; it also precludes federal courts from endeavoring to dispose of property that is in the custody of a state probate court. But it does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall v. Marshall*, 547 U.S. 293, 311–12, 126 S. Ct. 1735, 1748 (2006).

---

[5] This statement is more reminiscent of a closely related doctrine, that being the doctrine of the inverse order of alienation. The policy requires that a lienholder collect his debts from land incumbered in the inverse order that the land was sold—that is to say the most recently sold land must be foreclosed upon first. The basic policy rests "upon the grounds that where one who is bound to pay a mortgage confers upon others rights in any portion of the property, retaining other portions himself, it is unjust that they should be deprived of their rights, so long as he has property covered by the mortgage, out of which the debt can be made. In other words, his debts should be paid out of his own estate, instead of being charged on the estates of his grantees." *Hawkins v. Potter*, 62 Tex. Civ. App. 126, 130, 130 S.W. 643, 645 (1910, writ ref'd) (quoting *Cooper v. Bigly*, 13 Mich. 463, 474 (1865)).

4

The Fifth Circuit derived the following test for the probate exception:

> As we see it, to determine whether the probate exception deprives a federal court of jurisdiction, *Marshall* requires a two-step inquiry into (1) whether the property in dispute is estate property within the custody of the probate court and (2) whether the plaintiff's claims would require the federal court to assume *in rem* jurisdiction over that property. If the answer to both inquiries is yes, then the probate exception precludes the federal district court from exercising diversity jurisdiction. Here, we find the case outside the scope of the probate exception under the first step of the inquiry because the Trust is not property within the custody of the probate court.

*Curtis v. Brunsting*, 704 F.3d 406, 409 (5th Cir. 2013).[6]

The Trustee argues the probate exception fails the first step of the test because the property is no longer within the purview of the probate court. In support of his argument, he provides an order from the probate court (signed and entered on October 14, 2022) that appoints Rebecca Archer McCarthy as the independent administrator and identifies Ruth Archer's heirs and the heirs' share of her probate estate. Tr. Br. in Supp., App. at 29–31 [ECF No. 176-1]. The Trustee's argument requires the Court to find the boundaries of property in the "custody of the probate court." Under the Texas Estates Code, when an independent administrator is appointed, "further action of any nature *may not be had* in the probate court except where this title specifically and explicitly provides for some action in the court." Tex. Estates Code § 402.001 (emphasis added). This inquiry does not, however, necessarily resolve the true issue of the custody of the property. This question can be addressed another day because the second prong is much cleaner.

The Supreme Court stated that the exception "does not bar federal courts from adjudicating matters outside those confines and otherwise within federal jurisdiction." *Marshall*,

---

[6] In an unpublished opinion, the Fifth Circuit noted that the court describes the probate exception as applying to diversity jurisdiction, and it remains an open question, in this circuit, as to whether the probate exception applies to federal-question jurisdiction. *Kinder Morgan., Inc. v. Crout*, 814 F. App'x 811, 815–16 (5th Cir. 2020).

547 U.S. at 312.[7] With that said, the Court, in determining the marshaling issue, is not determining the distribution of the probate estate. The IRS contends that the practical effect of directing the IRS to marshal the assets of the probate estate is the same as ordering a distribution of probate estate assets. The Court disagrees. The Court would not be determining heirs or their respective shares, rather the Court would be determining how the IRS should collect its debt from the two pools of assets available to the IRS (the bankruptcy estate and the homestead exempted from the bankruptcy estate). Texas courts have expressed similar views that an order marshaling assets "does not dispose of the assets and does not determine final ownership of the assets in question." *In the Guardianship of the Pers. & Est. of Jordan*, 348 S.W.3d 401, 413 (Tex. App.—Beaumont 2011, no pet.).[8]

Here, because the Trustee is not asking the Court to administer property of the probate estate, the question of marshaling assets of the probate estate does not trigger the probate exception to the Court's jurisdiction.

  2. *Marshaling Applicability to United States of America*

The IRS contends that, as a matter of law, it cannot be subject to the doctrine of marshaling. The IRS relies on cases from the Second Circuit, Ninth Circuit Bankruptcy Appellate Panel, the Ninth Circuit, the Western District of Texas, the Southern District of Florida, the District Court of Delaware, and the Western District of Michigan.

*United States/IRS v. Valley Nat'l Bank (In re Decker)* lends the most support to the IRS's position. 199 B.R. 684 (B.A.P. 9th Cir. 1996). There, the Ninth Circuit Bankruptcy Appellate

---

[7] *See also Markham v. Allen*, 326 U.S. 490, 494, 66 S. Ct. 296, 298 (1946) (A federal court "may exercise its jurisdiction to adjudicate rights in such property where the final judgment does not undertake to interfere with the state court's possession save to the extent that the state court is bound by the judgment to recognize the right adjudicated by the federal court.").
[8] This is in stark contrast to a Kansas Supreme Court decision in 1949, where the court stated: "There can be no doubt … that all proceedings necessary and incident to the marshaling of the assets of an estate come within the exclusive original jurisdiction of the probate court." *Wright v. Rogers*, 167 Kan. 297, 300, 205 P.2d 1010, 1013 (1949).

Panel followed Ninth Circuit precedent that a "junior lienholder cannot invoke the marshaling doctrine to prevent the United States from enforcing its tax liens against any property for which enforcement is authorized by the applicable federal statutes." *Id*. at 688 (quoting *Silverstein v. United States (In re Ackerman)*, 424 F.2d 1148, 1150 (9th Cir. 1970)).[9] The Ninth Circuit Bankruptcy Appellate Panel maintained that, as a matter of law, the IRS cannot be forced to marshal assets.

The IRS also looks to *United States v. Herman*, in which the entire discussion on applying the doctrine of marshaling to the IRS is: "We find no merit in other miscellaneous contentions made by appellants. … Nor will we subject the government to a requirement that it marshall assets in favor of junior lienors, as this would create an extreme burden on collection of the revenue, unauthorized by statute." 310 F.2d 846, 848 (2d Cir. 1962). This single sentence on marshaling arose from "an appeal from a summary judgment, without opinion, ... granting foreclosure of a tax lien of the United States as prior in right to tax liens on real property acquired by appellants...." *Id*. at 846–47. (The appellants purchased a tax lien on the property for unpaid school taxes and county taxes.) The district court did not require the IRS to marshal assets, nor did the Second Circuit. It is unclear whether the Second Circuit viewed the "extreme burden" as a factual issue established in the district court, or whether it considered that "extreme burden" was established as a matter of law.

The IRS relies on district court cases, as well. Looking to a case from the Western District of Texas, the IRS cites the district court's findings of facts and conclusions of law, where the district court concluded marshaling assets would impose an "intolerable and unnecessary burden, unauthorized by statute, on the collection of federal revenue and thus cannot be applied

---

[9] The IRS looks to another Ninth Circuit case, *Kovacs v. United States*, that stands for the same proposition. 355 F.2d 349, 351 (9th Cir. 1966).

against the United States." *Northington v. United States*, MO-71-CA-86, 1972 WL 3194, at *4, 1972 U.S. Dist. LEXIS 13408, at *12, 30 A.F.T.R.2d 72-5832 (W.D. Tex. June 6, 1972). For this conclusion, the district court looked to the previously mentioned Second and Ninth Circuit cases along with the district court cases cited by the IRS.

To counter the IRS's extensive list of cases, the Trustee refers to *Houghton v. United States (In re Szwyd)*, 444 B.R. 10 (Bankr. D. Mass. 2011). In *Houghton*, the bankruptcy court granted the trustee's request to compel the IRS to marshal assets of the debtor to preserve funds in the bankruptcy estate for creditors. The court answered the question of whether marshaling can be applied to the United States, first on the IRS's motion to dismiss and, second, three years later after an unsuccessful appeal by the IRS, on the parties' cross motions for summary judgment. *Houghton v. United States (In re Szwyd)*, 394 B.R. 230, 237–38 (Bankr. D. Mass. 2008). The bankruptcy court "reject[ed] any reading of *Herman* as establishing a per se rule prohibiting marshaling against governmental taxing authorities and believes that the language of *Herman* was, appropriately, a case-specific decision." *Id*. at 237. The district court affirmed the bankruptcy court's decision. *United States v. Houghton (In re Szwyd)*, 408 B.R. 547 (D. Mass. 2009).

Despite the guidance referenced from the Ninth and Second circuit cases, the Court is reluctant to hold that, as a matter of law, imposing marshaling on the IRS would be an undue burden. Instead, the Court should address the equitable remedy based on the facts of the case before the Court.

   3. *Appropriateness of Marshaling in This Case*

The substantive argument the IRS makes is that the Trustee failed to allege or establish the threshold requirements of marshaling. The IRS looks to the threshold elements recited in *In re Packard*: "1) the contesting claimants both have secured claims against a common debtor; 2)

8

the funds in question belong solely to the common debtor; and 3) one of the lienors, alone, could resort to more than one fund or asset of the debtor." 112 B.R. at 157 (citing 53 AM. JUR. 2d *Marshaling Assets* § 7 (1970)). The IRS submits the Trustee failed to establish a single element.

The IRS's strongest argument from the cited test is that it requires the two claimants have *secured* claims, an element that is identified in the treatise cited by *In re Packard*.[10] *See* 53 AM. JUR. 2d *Marshaling Assets and Inverse Order of Alienation* §§ 1–5. There is more support than criticism for the view that "an unsecured creditor may not invoke the doctrine of marshaling assets." *In re Mesa Intercontinental, Inc.*, 79 B.R. 669, 672 (Bankr. S.D. Tex. 1987) (citing cases). Recently, in dicta, Judge Boyle of the Northern District of Texas cited *In re Mesa* for the test of the marshaling doctrine that requires two secured creditors. *Yaquinto v. JGB Collateral, LLC*, No. 3:20-CV-2847-B, 2021 WL 2386143, at *2, 2021 U.S. Dist. LEXIS 112309, at *7 (N.D. Tex. Jan. 26, 2021).

The Trustee's motion is brought for the benefit to general unsecured creditors, whose recovery is solely from the bankruptcy estate. ECF No. 117 ¶ 13. And it is important to note that the Court's claims register reflects that the other secured claims have been either disallowed [Claim No. 6] or withdrawn as satisfied [Claim Nos. 7 & 8]. All the remaining filed claims, including the IRS's claim,[11] are unsecured. Claim Nos. 1–5.

The policy underlying both the doctrine of marshaling and bankruptcy—to maximize recovery for all affected creditors—is undercut by the test that limits marshaling to disputes between two *secured* creditors.

---

[10] The principal is also found in *In re Dan Hixson Chevrolet Co.*, 20 B.R. 108, 113 (Bankr. N.D. Tex. 1982) ("When a paramount creditor has liens on two funds from which to satisfy his debt and a creditor with a subsequent lien has only one fund from which to satisfy his debt, the subsequent creditor may require the paramount creditor to resort initially to the singly charged fund.").
[11] The IRS's amended proof of claim reflects the claim is "unsecured" but then goes on to describe the nature of the property securing the claim as "[a]ll of debtor(s) rights, title and interest to property – 26 U.S.C. § 6321." Claim No. 2-3 at 2.

The rigid test offered by the IRS, and supported by caselaw, fails to encapsulate the nuance under Texas law where the courts have imposed marshaling to protect subsequent grantees. (*See* discussion above at 4.) Whether grantees are sufficiently analogous to the trustee and unsecured creditors is unclear and raises yet another issue. This point has not been raised, much less argued, by the parties here.

To the second element in the IRS's test, the IRS argues that the Trustee failed to offer evidence that the homestead was property of the Debtors instead of the "Ruth E. Archer Foundation," in whose name the homestead was titled. ECF No. 157 at 17. The Trustee, however, provides evidence that a judgment voided the Debtors' transfer of the homestead to the foundation. ECF No. 176-1 at 32–33.

On the final element, the IRS submits that both it and the Trustee may recover from the probate estate. ECF No. 157 at 17–18. The basis for this argument is that because the Archers were not survived by minor children, the property is no longer shielded by the Texas homestead exemptions in the probate court, and thus the Trustee can file a claim in the probate court. Texas caselaw establishes that the status of a homestead is immediately ascertainable upon the decedent's death "[b]ecause the existence of a surviving constituent family member is the determining factor." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Olson*, 920 S.W.2d 458, 462 (Tex. App.—Austin 1996, no writ); *see also Caceres v. Graham*, 603 S.W.3d 849, 856–57 (Tex. App.—Houston [14th Dist.] 2020, no pet.). Thus, after Ruth Archer's death, the property presumably lost its homestead status. This raises the curious question of what rights does the Trustee have to pursue property exempted from the bankruptcy estate when the bankruptcy petition was filed but is now available to creditors under state law?[12] This status of the Archer

---

[12] Neither the IRS nor the Trustee argue that the homestead is part of the bankruptcy estate, which generally comports with the notion that an exemption claimed on the date of petition in a chapter 7 case is valid through the case. *See generally Lowe v. DeBerry (In re DeBerry)*, 884 F.3d 526 (5th Cir. 2018).

10

probate proceeding and whether the Trustee, on behalf of creditors, can pursue a claim has not been sufficiently addressed by the parties. It is an issue replete with additional facts and thus not proper for summary judgment.

Apparently, as the IRS points out, the Trustee has filed claims in the probate estate. ECF No. 157 at 18–19. In his response, the Trustee clarifies that he filed a claim in the probate estate "on behalf of the IRS." ECF No. 176 ¶ 23. The Trustee has a duty to reduce property of the *bankruptcy estate* to money, *see* 11 U.S.C. § 704(a)(1); this, however, does not mean the Trustee should collect or take possession of property that the debtor claimed as exempt. 6 COLLIER ON BANKRUPTCY ¶ 704.02[1] (16th 2024).

The IRS also contends it is unreasonable to force the IRS to collect its debts from a source outside of the bankruptcy estate when the estate could pay the IRS's claim in full. ECF No. 157 at 16. The Trustee disagrees. This is an inherently factual dispute.

III.

**CONCLUSION AND ORDER**

The IRS's motion for summary judgment should be denied. It is, therefore

ORDERED that the IRS's motion for summary judgment [ECF No. 156] is denied.

### End of Memorandum Opinion and Order ###